The State of Ohio, Appellant, *v.* Doyle, Appellee.

(No. 10010—Decided February 20, 1967.)

*Mr. Melvin G. Rueger* and *Mr. Fred J. Cartolano*, for appellant.
*Mr. Eugene D. Smith*, for appellee.

Hover, J. This is an appeal on questions of law from an order of the Court of Common Pleas dismissing an indictment of armed robbery against the accused, Doyle, on the ground he was denied a speedy trial.

Thereafter, and in a timely manner, the state gave notice to the trial judge of its intention to take an appeal to this court from the above order. A notice for leave to appeal to this court was filed and granted and a bill of exceptions was ordered to be prepared and filed. This has been done. Briefs have been filed by the state and by the trial court.

The underlying facts need some consideration to indicate the manner in which the question has arisen. On September 20, 1963, Doyle was indicted in Hamilton County and charged with armed robbery. He was free on bond at the time and could not be found for arraignment. It subsequently developed that at the time of indictment and ever since defendant, Doyle, has been confined in the Ohio Penitentiary serving a sentence as the result of conviction of another felony in another county of the state. In November 1963, this information became known to the Hamilton County officials who thereupon filed a so-called detainer with the prison authorities advising them that Doyle was wanted in Hamilton County as a result of the indictment. In February of 1964, Doyle's original bond was forfeited and satisfied by his surety.

Matters remained in status quo until February 1966, when Doyle was transferred at the request of the state to the county jail in Hamilton County. The reason for the transfer does not appear in the record, but the accused states that it was to stand trial. The bill of exceptions indicates that, sometime between November 1963 and February 1966, the exact date not being given in the record, Doyle wrote the prosecuting attorney in Hamilton County and requested that the "detainer" be dismissed. By answering letter, the prosecutor refused. At about the same time, Doyle requested of the clerk of courts a copy of the indictment. The record does not show any answer to this request.

On February 15, 1966, counsel was retained by Doyle, and at this time he entered a plea of not guilty to the indictment. In May of 1966, when the case was scheduled for trial, defend-

ant, by his counsel, filed a motion to discharge him according to Section 2945.71 of the Revised Code for the lack of a speedy trial, alleging that the defendant had been confined within the state of Ohio since September of 1963, and that the prosecuting authorities were aware of the confinement. The court determined the motion to be not well taken and, accordingly, overruled the same.

The case was ready for trial as scheduled on May 31, 1966. Both sides were ready to proceed, but a continuance was had by mutual agreement for the reason that no courtroom was available.

On June 15, 1966, defendant renewed his motion for a discharge for lack of a speedy trial, on statutory grounds. The motion was taken under submission by the court. A week later the case was called for trial and both parties were present and represented by counsel; the defendant waived a jury trial and the case was commenced on June 22 when the trial court heard evidence and arguments on the motion. On the next day of the proceedings the court determined that the motion to dismiss for lack of a speedy trial was well taken and that rights guaranteed the accused by the federal Constitution and by Article I, Section 10 of the Constitution of the state of Ohio, had been denied.

On July 5, 1966, the court entered its judgment on this basis and ordered the defendant discharged. It is from this order that the instant appeal is taken by the state.

The state, appellant here, claims to prosecute its appeal pursuant to Section 2953.02 of the Revised Code and related sections. These sections control appeals generally in criminal cases. The procedure used by the state, however, follows precisely the provisions of Section 2945.67 *et seq.* of the Revised Code relating to the authority of the prosecuting attorney to except to a decision of the trial court and to prosecute an appeal therefrom to the Court of Appeals. Section 2945.70, Revised Code, provides that the decision excepted to shall not affect the judgment of the lower court and that such judgment shall not be reversed unless the reversal is based upon the ruling of the trial court on a motion to quash, a plea in abatement, a demurrer, or a motion in arrest of judgment. The statute further provides that in all other cases the decision of the appellate

court "shall determine the law to govern in a similar case." Further reference will be made below to the status of this appeal in regard to the above two procedures.

At the outset we are confronted by the fact that the present case does not involve a violation of any statute providing a limitation upon the amount of time an accused may be held, either in jail or at bail, before he is entitled to be dismissed for lack of a speedy trial. The statutory provisions covering the failure to grant a speedy trial under certain conditions exist independently of the constitutional right. Two very recent pronouncements, *State* v. *Gray,* 1 Ohio St. 2d 21, and *Columbus* v. *Nappi,* 5 Ohio St. 2d 99, establish clearly that (1) the statute relating to jail confinements, if violated, as in the *Gray case,* requires what amounts to the acquittal of the defendant; but that (2) a similar but not identical statute applying to unreasonable continuances in preliminary matters, as in the *Nappi case* above, does not have the effect of an acquittal but merely of a discharge from custody.

Those two cases follow long established rules as to statutes dealing with a denial of a speedy trial, both in Ohio, beginning with *Ex Parte McGehan,* 22 Ohio St. 442, to and including the *Gray case* above, and in some, but not all, other jurisdictions. All these cases, both from this jurisdiction and others, while helpful on the subject of the denial of a speedy trial, are not controlling where an order is made, as here, that there has been a denial of a speedy trial under the Constitution and regardless of any statutory provision.

Pertinent here for example is *Shafer* v. *State,* 43 Ohio App. 493, decided by this court in 1932. In the *Shafer case* the right to a speedy trial, under the constitutional provision, was recognized but denied in spite of an eighteen-month confinement in the Ohio Penitentiary on another charge. It is clear from the opinion that the denial was for the reason that the eighteen-month delay was not sufficient to constitute a violation of the constitutional right. The court says of the constitutional guarantee, "the applicant has the undoubted right to have a speedy trial of pending indictments, and to have the truth thereof determined, notwithstanding he may be serving sentence in the penitentiary on other charges." However, in the *Shafer case* this court also held that it was not necessary for the accused

inmate to demand a speedy trial because it was the duty of the state to provide one, it being held, "It is not incumbent upon Shafer to apply for setting or to demand a trial. The duty is upon the state to bring the defendant to trial speedily." This court finally held under the circumstances that, "If, however, the matter [that is, Shafer's right to a speedy trial without demand] having been brought to its attention, the state fails to promptly bring Shafer to trial on the pending indictments, his constitutional rights will be violated, and he will be entitled to a discharge."

Subsequently, the Court of Appeals for Hardin County in *State* v. *Knight,* 77 Ohio App. 214, took a contrary view and held that under similar circumstances a defendant is not entitled to claim a denial of a speedy trial unless he performs some affirmative act in order to direct the court's attention to his claim.

In *State, ex rel. Lotz,* v. *Hover, Prosecuting Attorney,* 174 Ohio St. 68, the court held on page 71, "an accused cannot, whether he is in a penal institution or not, sit back for a long period of time without urging his right to a trial and then use such delay as a basis for the dismissal of the charges against him on the ground that he has been denied his constitutional right to a speedy trial." The court thereupon stated that although there was nothing in the record to affirmatively show that the accused inmate demanded a trial he had instituted an action in the Court of Common Pleas seeking a dismissal of the charges, and the petition was there denied. The court further stated, "Under such circumstances, it would appear that the relator, considering the fact that he is a layman, has done everything necessary to entitle him to relief, and that the unwarranted delay by the state in prosecuting its charges would entitle him to a dismissal thereof on the ground that he has been denied a speedy trial."

The writ of mandamus granted by that decision was subsequently withdrawn in *State, ex rel. Lotz,* v. *Hover,* 174 Ohio St. 380, on the sole ground that the prosecuting attorney was without authority under the law to effect the writ.

It will be noted that the Supreme Court recognized without question the principle that an accused inmate is required to take some affirmative action to avail himself of his constitutional right to a speedy trial. To this extent, obviously, the principle

propounded by this court in *Shafer* v. *State*, 43 Ohio App. 493, is not now the law of Ohio as to implementing the constitutional right. Shortly after the decision of the Supreme Court was announced in the *Lotz' case*, the court considered an action in habeas corpus originating in that court, in *Crider* v. *Maxwell*, 174 Ohio St. 190. The court, in considering petitioner's claim that he was denied a speedy trial, again reiterated that the constitutional right must be urged and that the failure to do so will constitute a waiver. Relief was denied.

Any doubt about the necessity of some affirmative action on the part of the accused inmate being necessary in order to invoke his constitutional right to a speedy trial is fully settled and determined in *Partsch* v. *Haskins, Supt.*, 175 Ohio St. 139. In that case the usual statutes were not involved; the case was based solely upon the constitutional provision. The court holds unequivocally, "Thus, in order for an accused to procure his release on the basis of a denial of his right to a speedy trial, he must show affirmative action on his part to secure a speedy trial." The court observes that there had been a delay of ten years between the return of the indictment and the plea thereto and that letters, in the form of what were undoubtedly similar to the detainers used in the case at bar, had been sent to and received by the penitentiary authorities during the period of confinement.

The court below in its opinion gave some weight to the fact that a so-called detainer had been filed with the penal institution in regard to the accused, Doyle. The two lower court decisions cited as authority for considering a detainer as something other than a wanted notice are in error in the same respect. A detainer, as such, has no standing either under the Constitution, the statutory law or case law. It is simply a method whereby a police authority advises the institution in whose custody an accused is held that there are charges pending against the accused in another jurisdiction. The detainer charges nothing, draws no issue, has no legal force or effect, and does not place any additional burden upon the accused. Whatever may be institutional or administrative rules governing the detainer procedure is of no moment in considering the defendant's allegation of denial of a speedy trial under the Constitution. Indeed, it could well be argued that a peace officer holding a war-

rant for the arrest of an accused confined elsewhere would be decidedly remiss in his duty if he did not advise the person who had custody of the accused that the warrant existed.

We do not find any indication, with the exception of the *Shafer case* above, that it is the duty and obligation of the attorney representing the state of Ohio to provide the speedy trial or dismissal to which a defendant is constitutionally entitled; however, the *Lotz case* above would indicate to the contrary, as would, it seems to us, common sense. The respective functions of prosecuting official and court would be more easily distinguishable in this respect if Ohio followed the custom in many states of captioning its criminal charges, "The People versus John Doe," as is done in such states as New York and Illinois, for example. This serves to draw a clearer distinction between the means provided by law to levy a charge against a citizen as distinguished from the means provided by law to furnish a forum whereby a court may determine the issue of guilt. The principle in Ohio, however, is the same regardless of the terminology. The people, through a grand jury in the case of felonies, bring the charge and consign the case to a prosecuting attorney for trial as their advocate. The sovereign itself, that is the state, provides the machinery whereby the accused is tried and the issue of guilt determined. This is done through the judicial function represented by judges and courts as distinguished from the administrative function of the prosecutor's office. The Legislature has undertaken to spell out the point of responsibility in Section 2945.02 of the Revised Code wherein it is provided that the Court of Common Pleas shall set all criminal cases for trial for a day not later than thirty days after the date of entry of the plea of the defendant. It provides that such cases shall be given precedence over civil matters and proceedings and then provides, "The failure of the court to set such criminal cases for trial, as required by this section, does not operate as an acquittal, but upon notice of such failure or upon motion of the prosecuting attorney or a defendant, such case shall forthwith be set for trial within a reasonable time, not exceeding thirty days thereafter." This would seem to indicate rather clearly that it is the duty of the court to provide the speedy trial rather than the prosecuting officer. While this section is undoubtedly directory rather than mandatory, it is a

clear indication of the intention of the Legislature relative to the duty of the court in which the charge is pending to provide a prompt trial for the accused. This practice, coupled with the requirement that an accused in confinement must take some action before the court to indicate his desire for a speedy trial, would seem to produce a just, certain and workable procedure. On the other hand, it is overly naive to presume that every accused actually serving a sentence is insistent upon being tried on some additional charge. It is not at all difficult to conceive circumstances wherein the right to a speedy trial is the last thing desired by the accused.

In the instant case, the record shows that on February 15, 1966, defendant plead not guilty to the indictment. The case was not scheduled for trial until May of 1966, at which point the defendant, by his counsel and in perfect consonance with that portion of the statute quoted above, gave notice to the court by the filing of a motion to dismiss that the defendant was entitled to a speedy trial or dismissal. This was the first affirmative move on the part of the defendant to demand the speedy trial to which he was entitled.

Although the motion was overruled, and properly so, the court, again consonant with the above statute, scheduled the case for trial in that same month. A continuance was then had by mutual agreement on May 31, 1966, at which time both parties were ready to proceed. Two weeks later, the defendant renewed his motion, and a week later the trial was commenced. It is thus seen that trial was actually commenced less than six weeks after the original motion of the defendant directing the court's attention to the potential denial of a speedy trial.

It seems to us that this time scheduling is well within the defendant's constitutional right to a speedy trial, both under the Constitution, and the adjudicated cases, and in substantial compliance with the directory statute.

The inconsistency is readily apparent in the act of a defendant in demanding a speedy trial for the first time on or about the occasion of the case actually being scheduled for trial. It would seem to be too late to make such a demand at or about the time the parties are in court and ready to proceed with the trial which the defendant then claims for the first time has been denied him. This whole area is rather thoroughly explored in

57 A. L. R. 2d 302 under the annotation "Waiver or loss of accused's right to a speedy trial," particularly pages 326 to 342, inclusive, where it is seen that while the cases are not uniform the general and majority rule throughout the country and in the federal courts is consistent with the views herein expressed.

The effect of the erroneous dismissal of the charge in the court below upon the present status of the indictment remains to be considered. The Ohio statute relative to a dismissal of the accused for failure to bring him to trial within the time provided (Section 2945.71, Revised Code) holds that the failure to provide the trial as required causes further proceedings to be barred. This is so simply because the statute so states. Where the statute does not so state, the court may only dismiss from custody without prejudice to further proceedings on the same offense. The distinction is clearly pointed out by the Supreme Court in *Columbus* v. *Nappi,* 5 Ohio St. 2d 99. The court in this respect follows the general rule that the statutory discharge operates as an acquittal only when that is the specific and stated effect of the statute. See, also, 50 A. L. R. 2d 943.

It would seem further that an accused who has been denied his constitutional right to a speedy trial, as distinguished from a mere statutory right, would be a person in regard to whom a lawful dismissal must also operate as an acquittal. To hold otherwise would be to make a vain and useless thing of an important segment of the Bill of Rights of both the state and federal Constitutions. If the sovereign were able to return repeated indictments against an accused who has been dismissed for lack of a speedy trial, the constitutional provision would mean nothing and the citizen would be subject to all the types of official harrassment which the Bill of Rights seeks to prevent, and contrary to every principle of constitutional law and human justice.

Here, however, we are concerned with a situation in which the dismissal is an erroneous one since. in this instance, defendant obviously has not been denied his right to a speedy trial. Under the circumstances, it seems to us that the dismissal accordingly lacks that degree of finality necessary to result either in a bar to further prosecution or as an acquittal. There appears to be nothing in the statutes governing criminal appeals generally, and in the particular statute relating to ap-

peals under limited circumstances by the state, to prevent the state from prosecuting an appeal on the merits from an interlocutory order of the court filed in the case prior to the time defendant was placed in any formal jeopardy by way of trial proceedings. In this case the facts indicate that defendant's motion for a dismissal was filed on June 15, 1966, and that the court considered the motion on June 22 and took testimony in support thereof at a time when the case was otherwise ready for trial. The court thereupon took the matter under consideration on the motion and the next day decided it to be well taken. The two motions to dismiss are analogous to the plea in abatement mentioned in the statute (Section 2945.70, Revised Code). They directed the court's attention to matters which were not apparent on the record but which could, if lawfully determined, effect a termination of the case; and, of course, otherwise if not lawfully determined.

There is nothing in the record to indicate that the defendant was in jeopardy at any time, since the jury had been waived and no testimony in support of the charge had been taken. Whether we consider that an appeal from the court's ruling would lie because it was interlocutory in the nature of a plea in abatement, or whether we consider that the defendant waived his right to a speedy trial by agreeing to a continuance in May and by signing a waiver of jury trial on the day of trial, the result is the same; that is, no jeopardy attached and the erroneous dismissal could therefore not amount to a final judgment of acquittal or dismissal.

To sum up, an accused is entitled to a speedy trial under the Constitution irrespective of any statute. He must make a demand, however informal, upon the court itself to assert his right. Neither a detainer filed with a penal institution nor correspondence with the prosecuting attorney, nor a letter of inquiry to the Clerk of Courts provides the necessary affirmative action to require the court to provide the speedy trial. A trial granted within approximately six weeks after a demand is made upon the court for a speedy trial is a compliance with, rather than a denial of, the constitutional right. The erroneous granting of a motion to dismiss an indictment on the constitutional ground does not result in an acquittal of the accused, nor is it a

bar to further proceedings on the indictment. The state may appeal such proceedings in a criminal case, and the appeal, if valid, will not have the effect of a dismissal or an acquittal in the absence of any jeopardy on the part of the accused.

The dismissal of the court below is reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed.*

HILDEBRANT, P. J., and LONG, J., concur.